UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME EDWARD BRAY,

               Petitioner,

v.                                   CASE NO. 04-CV-40123-FL
                                   HONORABLE PAUL V. GADOLA

JOHN CASON,

               Respondent.

_____/

## OPINION AND ORDER DISMISSING MERITLESS CLAIMS
## AND
## GRANTING AN EVIDENTIARY HEARING ON THE REMAINING CLAIMS

      Petitioner Jerome Edward Bray has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. Petitioner sets forth numerous claims in his application. For the reasons set forth below, the Court will order an evidentiary hearing to further assess his claims of ineffective assistance of counsel as to the attorneys that represented him at trial and at the suppression hearing. All other claims lack merit and will be dismissed.

### I. Background

### A. The State Court Proceedings

      Petitioner was arrested on March 3, 1997, and charged in Wayne County, Michigan with possession with intent to deliver 650 or more grams of cocaine, MICH. COMP. LAWS §

333.7401(2)(a)(i), possession with intent to deliver less than five kilograms of marijuana, MICH. COMP. LAWS §333.7401(2)(d)(iii), and possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f.  Before trial, Petitioner moved through counsel to suppress his statement to the police and evidence obtained during searches of his car and an apartment on Tobin Street in Inkster, Michigan.[1] The trial court denied his motion, and on April 17, 1998, a circuit court jury found Petitioner guilty as charged.  The trial court sentenced Petitioner as a habitual offender to concurrent terms of life imprisonment for the cocaine conviction, two to four years for the marijuana conviction, and two to five years for the firearm conviction.

Petitioner moved for a new trial, alleging ineffective assistance of trial counsel.  The trial court held a *Ginther* hearing[2] and denied Petitioner's motion.

Petitioner raised his first five habeas claims through counsel in an appeal to the Michigan Court of Appeals.  Petitioner raised his remaining habeas claims (VI through XVI) in a motion for leave to file a *pro se* supplemental brief.  The Michigan Court of Appeals denied leave to file the *pro se* brief, and on March 18, 2003, the court of appeals affirmed Petitioner's convictions.  *See People v. Bray*, No. 229481, 2003 WL 1387141 (Mich. Ct. App. Mar. 18, 2003)(unpublished opinion).

The same claims were presented to the Michigan Supreme Court.  On October 30, 2003, the

---

[1]  Petitioner was represented by Steven Fishman at the pretrial motion to suppress evidence, but at trial, he was represented by Raymond Burkett and Arlene Woods.  At the post-conviction hearing on his motion for new trial, he was initially represented by Mark Kriger and later represented by Thomas Loeb.

[2]  In Michigan, a hearing on a claim of ineffective assistance of counsel is known as Ginther hearing.  *See People v. Ginther*, 390 Mich. 436; 212 N.W.2d 922 (1973).

2

Michigan Supreme Court denied leave to file the *pro se* issues and denied leave to appeal the other issues because Petitioner failed to establish that the questions presented should be reviewed. *See People v. Bray*, 469 Mich. 945; 670 N.W.2d 671 (2003) (table).

## B.  Federal Court Proceedings

Petitioner filed his habeas corpus petition on May 25, 2004.  The habeas petition raises the sixteen claims that Petitioner presented to the state courts through counsel and in *pro se* briefs.  The Court has numbered these claims as follows:

I.      Jerome Bray was denied his constitutional rights to remain silent and to due process of law when the trial court admitted statements obtained as a result of apparent promises of leniency in exchange for defendant's cooperation, [U.S. CONST. amend. XIV; MICH. CONST. 1963 art. I, § 17, 20].

II.     Defendant was denied his due process right to the effective assistance of counsel, where his trial attorneys concurrently represented three criminal defendants with conflicting interests that influenced trial strategy, where counsel refused to allow defendant to testify, and where counsel's failure to explore the correctness of documents presented by a key defense witness, resulted in blatantly perjurious testimony being presented to the jury.

III.    The prosecutor engaged in unlawful prejudicial misconduct where he improperly impeached a key defense witness with a prior conviction and where he shifted the burden of proof in closing argument.

IV.     Defendant was denied a fair trial where in his opening statement, the prosecutor referred to inadmissible 404(B) evidence involving the execution of a search warrant at a location other than the one for which Defendant was on trial.

V.      Defendant was denied a fair trial where veteran police witnesses repeatedly testified that they were aware of defendant and had contacts with him prior to the instant offense and defense counsel was ineffective in not moving for a mistrial.

VI.     Defendant is entitled to a new evidentiary hearing where the hearing was not full, fair, and adequate, where the contested affidavit and warrant were never introduced during the hearing in violation of state and federal law.

VII.    Defendant is entitled to a new suppression hearing and suppression of the evidence in question where he was denied effective assistance of counsel during his hearing[.]  Counsel failed to request or present the affidavit and warrant which was under attack.

VIII.   Defendant is entitled to suppression of the evidence where the affidavit failed to establish probable cause and meet statutory requirements; the affidavit is fatally defective in violation of state and federal law.

IX.     Defendant is entitled to an evidentiary hearing pursuant to *Franks v. Delaware* where the affidavit contained recklessly false statements which are in violation of Defendant's state and federal rights.

X.      Defendant is entitled to a new *Ginther* hearing where his counsel's representation was ineffective where he failed to call either counsel during the hearing based on a misconception of the law in violation of Defendant's state and federal rights.

XI.     Defendant was denied his constitutional right to effective assistance of counsel where a conflict of interest existed where counsel represented Ned Davis and Deon Brown[.]  The conflict was raised by the prosecution after impaneling the jury.  The conflict is in violation of state and federal law.

XII.    Defendant is entitled to a new trial where the trial court['s] erroneous conduct and rulings throughout trial denied Defendant of his right to a fundamentally fair trial in violation of his state and federal rights.

XIII.   Defendant is entitled to dismissal of the charges where the prosecutor intentionally injected highly inadmissible evidence on two occasions

4

and a mistrial was requested by trial counsel[.]  Re-trial is barred by double jeopardy[.]  This is in violation of state and federal law.

XIV.    Defendant is entitled to a new trial where the prosecutor committed several errors which denied the defendant of his state and federal right to a fundamentally fair trial.

XV.    Defendant is entitled to reversal of his conviction where he was denied his state and federal right to effective assistance of counsel as guaranteed by state and federal constitutions where counsel made several errors during the course of trial.

XVI.    Defendant is entitled to a new trial where errors permeated the entire trial, where all of the errors may not require reversal standing alone, viewed under the cumulative effect standard, reversal is required; Petitioner was denied his state and federal rights.

Respondent argued in an answer to the habeas petition that Petitioner did not exhaust state remedies for claims VI through XVI, because the state appellate courts never accepted those claims for filing.  On December 29, 2005, the Court rejected Respondent's exhaustion defense and directed Respondent to address the merits of Petitioner's claims.  Respondent then filed a supplemental answer, and Petitioner filed a reply.

The Court subsequently ordered Respondent to file the transcripts of the state court hearing on Petitioner's motion to suppress his statement to the police and other evidence.  Respondent then filed the transcript for a hearing held on October 24, 1997.  Staff at the Michigan Attorney's General Office subsequently informed the Court by telephone that they were unable to locate any other volumes of transcript for the suppression hearing.

## II.  The Facts

The Michigan Court of Appeals has summarized the facts as follows:

5

Defendant came to the attention of Westland police when they arrested Ned Davis. Davis provided information to police about cocaine dealers in the area, including a dealer named "J," who drove a Camaro. Based on information obtained from Davis, police set up surveillance at an apartment at 515 Tobin Street in Inkster, and identified a Camaro parked in front as belonging to defendant.

During several days of conducting surveillance at the Tobin Street apartment, police noticed that defendant frequently stopped by the apartment for short periods of time, and then left. Police obtained a search warrant for the apartment which they executed on March 3, 1997. That evening, officers saw defendant arrive at the apartment, and shortly thereafter, they saw him leave carrying a small knapsack over his shoulder. Defendant got in to his car and drove away, the officers pursued in their patrol cars until defendant reached a dead end. Defendant left his car, jumped a fence, and ran. After several blocks, police, who were on foot and yelling, "police, halt," finally apprehended defendant. During his arrest, defendant resisted and a police officer hit him in the head with a gun, leaving a minor cut.

A search of defendant's car revealed a plastic bag containing 139 grams of powder cocaine and a knapsack containing three heat sealed plastic bags. The first heat sealed plastic bag held 14 knotted plastic bags, each containing about 110 grams of crack cocaine; totaling 1,400 grams of crack cocaine. The second heat sealed plastic bag held eight knotted plastic bags containing powdered cocaine; one weighed 123.74 grams and the other seven weighed 873 grams, for a total of about 997 grams. The third heat sealed plastic bag held 978.6 grams of powdered cocaine.

A search of the Tobin Street apartment revealed a nine millimeter handgun in a kitchen cupboard next to three boxes of Ziploc bags and a package of cling wrap. There was also a large box of baking soda and a digital scale as well as two saucepans on top of the stove caked with white residue. Another cupboard contained fourteen knotted plastic bags each holding 26.76 grams of marijuana. Police also found two more handguns and another plastic bag containing marijuana. They found a calculator next to a ledger containing more than twenty names and dollar amounts. The dishwasher was full of items covered in white powder residue that field-tested positive for cocaine. In the bathroom, police found a bag under the sink containing $9,500. In the bedroom, they found another ledger with more than twenty names and amounts of money totaling $52,000.

Following his arrest, police advised defendant of his rights and defendant indicated that he understood them. Defendant gave a statement admitting that he sometimes sold drugs and that he intended to sell the drugs in his car once his boss told him to go ahead. Defendant also gave a written statement admitting that he had done wrong

and expressing his hope that his cooperation with the police would help him.

Police officer Scott Murray testified that he thought that he had called both the DEA and the IRS about defendant's case at the request of defendant. But he was certain that he told defendant that any deals concerning pending charges would have to be worked out with the prosecutor's office and that information he provided would have to be corroborated by police. He also told defendant that the DEA was interested in his cooperation but that they wanted him or his attorney to contact them directly.

At trial, defendant's aunt, sister and a friend all testified that defendant was in California during the time that police were observing the Tobin Street apartment. The defense's theory of the case was that defendant was not even in town during the surveillance and that police had defendant confused with his cousin. Defendant's sister testified that she was also his supervisor at work, and she provided documents that showed defendant had requested a vacation during that time. However, another witness, Valerie Sovinski testified that defendant's sister was not a supervisor, nor did she have authority to prepare personnel records, and the records that she provided to the court were not legitimate. Sovinski testified that defendant's personnel file indicated that he had worked on the days in question and that he was a part-time employee who did not accrue any leave time. Subsequently, all three of the witnesses who testified that defendant went to California were charged with perjury.

Defendant was convicted as charged. Following defendant's conviction, he filed a motion for a new trial alleging ineffective assistance of counsel. His claim was based on the fact that his attorneys represented his cousin as well as the informant who led police to defendant. The court denied defendant's motion for a new trial, finding that defendant had failed to demonstrate that, but for counsels' alleged errors, the result of his trial might have been different and that defendant retained his attorneys with full knowledge that there was a potential conflict.

*Bray*, 2003 WL 1387141, at *1-2.

### III.  Alleged Ineffective Assistance of Counsel at Trial and at the Suppression Hearing

#### A.  Claims II, XI, and XV:  Ineffective Assistance During Trial

The second and eleventh habeas claims allege ineffective assistance of trial counsel.

Petitioner asserts that his trial attorneys (Raymond Burkett and Arlene Woods) operated under a

conflict of interest, refused to let him testify, and failed to investigate a defense witness's proposed

7

testimony.  The fifteenth claim repeats some of these same claims and also alleges that defense counsel gave an incoherent opening statement and failed to present a defense, failed to object on several occasions, and opened the door to prejudicial evidence.

A habeas petitioner generally "is entitled to an evidentiary hearing in federal court if the petition 'alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing.' " *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (quoting *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994)).

Examining the instant case, Petitioner has alleged grounds which may entitle him to relief. Among the claims that Petitioner raises are that his trial attorneys:  (1) knowingly refused to permit Petitioner to testify; (2) failed to investigate the authenticity of documents, which Petitioner's sister presented at trial; and (3) operated under a conflict of interest when they concurrently represented him, the confidential informant in the matter, Ned Davis, and Petitioner's cousin Deon Brown, whom also allegedly had intimate knowledge regarding Petitioner's crime.

Petitioner's lead trial attorney, Raymond Burkett, has stated in an affidavit that, despite knowing Petitioner wanted to testify at trial, Burkett unilaterally rested the defense case without calling Petitioner as a witness.  Burkett also admits in his affidavit that his decision not to have Petitioner testify was the result of anger, not trial strategy.  He admits that he was incensed when he learned that Petitioner's sister, testifying on Petitioner's behalf, had produced forged documents during her testimony in an effort to support Petitioner's alibi.  *See* Pet. for Writ of Habeas Corpus, Ex. L (Affidavit of Raymond R. Burkett).

Although the state court held on evidentiary hearing on Petitioner's's claim of ineffective

8

assistance of trial counsel, Petitioner's trial attorneys (Mr. Burkett and Ms. Woods) did not testify

at the hearing.   They asserted their Fifth Amendment right to remain silent, because the prosecutor

had subpoenaed them in a parallel proceeding that charged three defense witnesses with perjury at

Petitioner's trial.

In addition to the lack of any testimony by Mr. Burkett and Ms. Woods, certain facts are

unclear from the record.  For example, Deon Brown, Petitioner's cousin who was also involved in

events that were intertwined with those acts for which Petitioner was charged, has stated in affidavit

that he retained Burkett and Woods to represent him in a criminal case charging him with a weapons

offense.  *See* Pet. for Writ of Habeas Corpus, Ex. N.  When the prosecutor raised this issue at

Petitioner's trial, Mr. Burkett stated that he thought Clarence Darling had represented Brown.  (Tr.

Apr. 15, 1998, at 192-93).

Therefore, after a full consideration of the issues surrounding Claims II, XI, and XV, and

fully aware of the serious nature of these claims, the Court reserves judgment on these claims

regarding attorneys Burkett and Woods.  Petitioner may raise those claims at the evidentiary hearing.

## B.  Claim VII:  Ineffective Assistance of Counsel at the Suppression Hearing

The seventh habeas claim alleges that Petitioner's attorney at the pretrial suppression hearing

(Steven Fisher) provided ineffective assistance.  Petitioner asserts that Mr. Fisher (1) failed to

request or produce the affidavit and warrant under attack, (2) failed to conduct a reasonable

investigation when the police took a dog into a secured apartment building to conduct a search, (3)

failed to call witnesses at Petitioner's suppression hearing, (4) failed to investigate the surveillance

dates and the staleness of the information contained in the affidavit and warrant, and (5) failed to

utilize the necessary skills required to have the illegally obtained evidence suppressed.

The pretrial hearing on Petitioner's motion to suppress evidence occurred over a number of days, but the record before the Court includes only one volume of the transcript of the hearing. *See* Tr. Oct. 24, 1997. The Court has been hindered in evaluating Petitioner's allegations about Mr. Fishman, because Respondent has been unable to produce the entire transcript of the suppression hearing.

Although Fourth Amendment claims are not cognizable on habeas review, *Stone v. Powell*, 428 U.S. 465 (1976), "federal courts may grant habeas relief in appropriate cases, regardless of the nature of the underlying error." *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986). An evidentiary hearing may assist the Court in discerning what occurred at the suppression hearing and whether Petitioner's claims about Mr. Fishman have any merit. The Court therefore reserves judgment on habeas claim VII. Petitioner may raise that claim at the evidentiary hearing.

### IV. Standard of Review for Petitioner's Remaining Claims

Petitioner's remaining claims lack merit. The Court will proceed to address those claims in light of the following standard of review.

A habeas petitioner is entitled to the writ of habeas corpus only if the petitioner can show that the state court's adjudication of the claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original).  "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)."  *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

"Where a state court does not evaluate the merits of a petitioner's federal claim, the deferential standard of review mandated by the AEDPA does not apply."  *Higgins v. Renico*, __ F.3d __, No. 05-1564, 2006 WL 3345289, at *5 (6th Cir.  Nov. 20, 2006).  Instead, the issues are reviewed *de novo*.  *Id.* (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) and citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

## V.  Discussion

11

## A.  Claim I:  Involuntary Statement to the Police

The first habeas claim alleges that Petitioner was denied his constitutional right to remain silent when the trial court admitted into evidence Petitioner's custodial statement to the police. Petitioner alleges that his statement was involuntary because it was obtained through a promise of leniency.  According to Petitioner, the police led him to believe that, if he provided a statement and cooperated with the police, he might be prosecuted in federal court rather than in state court. Because the penalty in state court was life imprisonment without the possibility of parole, Petitioner alleges that the inducement of a federal prosecution in return for his statement influenced his decision to make an admission.

### 1.  Legal Framework

The Supreme Court has stated,

> convictions following the admission into evidence of confessions which are involuntary, *i.e.*, the product of coercions, either physical or psychological, cannot stand.  This is so not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law:  that ours is an accusatorial and not an inquisitorial system -- a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth.

*Rogers v. Richmond*, 365 U.S. 534, 540-41 (1961).  "Police promises of leniency and threats of prosecution can be objectively coercive," *United States v. Johnson*, 351 F.3d 254, 261 (6th Cir. 2003), but "not all psychological tactics are unconstitutional."  *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994).  In determining whether a confession was coerced or obtained by improper inducement, courts must review the circumstances surrounding the confessions.  *Haynes v.*

12

*Washington*, 373 U.S. 503, 512 (1963); *Leyra v. Denno*, 347 U.S. 556, 558 (1954).

## 2. State Court Findings

The voluntariness of Petitioner's admissions to the police was the subject of an evidentiary hearing in state court. Although Respondent has been unable to provide the complete transcript of that hearing, he did provide the volume containing the trial court's ruling. The transcript indicates that Petitioner did not testify at the hearing, but police officer Scott Murray testified that Petitioner raised the issue of a possible deal. According to the trial court's account of Officer Murray's testimony, Petitioner realized that he was facing a life sentence, Petitioner provided a statement before discussing any favors or a deal, and Murray informed Petitioner that only the prosecutor could make a deal.

The trial court determined from the totality of the circumstances that no direct promises of a deal were made to Petitioner in return for his statement. The trial court concluded that Petitioner's statement was voluntarily made and was not induced by a promise from Officer Murray. (Tr. Oct. 24, 1997, at 20-22).

The Michigan Court of Appeals made the following additional findings of fact:

[B]oth officers testified they informed defendant that, if he wanted to negotiate a plea bargain in exchange for information, he would need to contact the prosecutor. One officer testified at trial that he contacted the DEA at defendant's request, but that they also indicated that defendant would need to approach them directly if he wanted to cooperate. There is also no evidence that the officers intimidated defendant concerning his potential sentence. In fact, both officers indicated that defendant already knew that he was facing mandatory life in prison without parole. Additionally, there was no evidence that defendant was denied needed medical care in order to force him to make a statement. In fact, at the hearing of defendant's motion for a new trial, the court examined defendant's mug shot and found that it "did not show the cut on his forehead that he claimed had been bleeding profusely."

13

*Bray*, 2003 WL 1387141, at *3.  The court of appeals found no evidence that Petitioner was promised leniency in return for his statement.  The court of appeals concluded that the trial court did not err in finding that Petitioner's statements were the product of a free and deliberate choice rather than police coercion.

### 3. Application

Petitioner maintains that Officer Murray was not a credible witness because Murray's testimony at the evidentiary hearing contradicted his trial testimony concerning whether Murray contacted the Federal Drug Enforcement Agency (DEA) on Petitioner's behalf.  At the evidentiary hearing, Officer Murray apparently testified that he did not contact the DEA on Petitioner's behalf.

At trial, Officer Murray made contradictory comments about whether Petitioner had asked him to contact the DEA.  First, Murray testified that Petitioner *did* ask him to call the DEA.  But later, he testified that he could not remember whether Petitioner asked him to make the phone call to the DEA or whether he had merely made that option available to Petitioner.  Then, when impeached with his earlier testimony, Murray testified that Petitioner never asked him to call the DEA.  Officer Murray admitted that he actually contacted the DEA and that the DEA was interested in talking to Petitioner but, he claimed, he visited Petitioner in jail and informed him to personally contact the agency if he wanted to pursue the matter.

Although Officer Murray stated that "bits and pieces" of the conversation about a possible deal occurred before the interview with Petitioner, he thought that the majority of the conversation happened after the interview.  He maintained that he did not promise Petitioner anything and that

he merely informed Petitioner that any information he provided would have to be corroborated by the police and then taken to the prosecutor's office for a determination of the charges. He also testified that Petitioner knew he could not promise him anything and that Petitioner knew he was facing mandatory life in prison. (Tr. Apr. 15, 1998, at 110-15, 119-20.)

Despite Murray's wavering testimony, Petitioner, readily able to read and write as evidenced by him having completed two years of college at the time of the police interview, indicated in his written statement that he was not promised anything for his answers. *Id*. at 66. Furthermore, Petitioner did not testify at the suppression hearing, and he did not mention a promise of leniency when he testified at the *Ginther* hearing.

The state court concluded that Petitioner's statement was voluntary and not the result of police coercion. This Court finds that the state court's conclusion was not contrary to, or an unreasonable application of, Supreme Court precedent.

### B. Claims III, IV, V, XIII, and XIV:  Prosecutorial Misconduct

The third, fourth, fifth, thirteenth, and fourteenth habeas claims allege prosecutorial misconduct. In his third claim, Petitioner alleges that the prosecutor engaged in unlawful and prejudicial misconduct by impeaching a key defense witness with a prior conviction for possession of cocaine base and by shifting the burden of proof in closing argument. In his fourth, thirteenth, and fourteenth claims, Petitioner alleges that the prosecutor referred to inadmissible "other acts" evidence in his opening statement. And in his fifth claim, Petitioner alleges that he was denied a fair trial when the prosecutor elicited testimony from two veteran police officers that they had contacts with Petitioner before the instant offense. Petitioner claims that defense counsel was ineffective for

15

not seeking a mistrial on this basis.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)), *cert.* denied, 544 U.S. 921 (2005).  To prevail on a claim of prosecutorial misconduct, Petitioner must demonstrate that the prosecutor's conduct or remarks, taken in the context of the entire trial, were sufficiently prejudicial and infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 643 (1974).  It is not enough to show that the prosecutor's conduct was improper or even universally condemned. *Bowling*, 344 F.3d at 512.  The Court can grant relief only if the comments were "so flagrant as to render the entire trial fundamentally unfair." *Id*.

When reviewing claims of prosecutorial misconduct, the first question to consider is whether the prosecutor's conduct or remarks were improper.  *Slagle v. Bagley,* 457 F.3d 501, 516 (6th Cir. 2006).  If the conduct or remarks were improper, the court must consider whether the improper acts were so flagrant as to warrant reversal.  *Id*.  The Sixth Circuit has identified four factors to consider when analyzing conduct for flagrancy:

 (1) whether the remarks tended to mislead the jury or to prejudice the accused;
 (2) whether they were isolated or extensive;
 (3) whether they were deliberately or accidentally placed before the jury; and
 (4) the strength of the evidence against the accused.

*United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994)).  Further considering the issue of flagrancy, the Court ruled that,

 [i]n determining whether prosecutorial misconduct mandates habeas relief, [courts]
 apply the harmless error standard.  *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir.

16

1997).  An error is found to be harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson,* 507 U.S. 619, 638 (1993).

*Bates v. Bell*, 402 F.3d 635, 641 (6th Cir.), *cert. denied*, __ U.S. __, 126 S. Ct. 722 (2005).

### 1.  Impeachment of a Defense Witness

Petitioner alleges that the prosecutor improperly impeached defense witness George Carter by asking Carter on cross-examination whether he had been convicted of possession of cocaine base in 1989.  Petitioner alleges that the question undermined the credibility of a key defense witness.

The question was improper under state law because the prior conviction was not a crime containing an element of dishonesty, false statement, or theft.  Mich. R. Evid. 609(a).  Additionally, the question was deliberate.  But after the question, the trial court directed the jurors to disregard the prosecutor's question and not to assume that there were any charges or convictions in Carter's past. The court also charged the jurors to put the question out of their minds when considering the case. Tr. April 16, 1998, at 13, 22-23.

Jurors are presumed to follow their instructions.  *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).  Therefore, given the curative instructions that the attorneys' questions were not evidence and that the jurors were not to assume something was true simply because a lawyer's question suggested that it was true, the question likely did not to mislead the jury or prejudice Petitioner. Consequently, although the prosecutor's question was improper, the trial court's cautionary instruction cured the error.

## 2. Shifting the Burden of Proof[3]

Petitioner next alleges that the prosecutor improperly shifted the burden of proof in his closing argument. According to Petitioner, the prosecutor attacked the defense for not presenting testimony from Petitioner's girlfriend that Petitioner was staying in California while the officers conducted surveillance on the Tobin Street apartment.

Prosecutors may not suggest that the defendant carries the burden of proof or has any obligation to produce evidence to prove his innocence. *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993). However, prosecutors ordinarily are "entitled to wide latitude" in their rebuttal arguments and "may fairly respond to arguments made by defense counsel." *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982) (*en banc*) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

The disputed statements in this case must be viewed in the context of the comments made by defense counsel during his closing argument:

> The other thing is then after they rested we put Miss Liddell on, the fiancé sitting in the courtroom this morning. Now we didn't ask her did she go to Los Angeles or did she know that this man went to Los Angeles two weeks ago. Well if what Mr. King [the prosecutor] says is correct, she probably would have lied, said yes because see all of our witnesses are liars, every one of them. The only people in here that's telling the truth are the police officers.

Tr. Apr. 17, 1998, at 37.

On rebuttal, addressing defense counsel's statement, the prosecutor said:

> And Ms. Liddell, I think that's her name, I never called her a liar. Oh, if she said he

---

[3] Respondent has not argued that this claim is procedurally defaulted, even though the Michigan Court of Appeals stated that the issue was not preserved for appellate review because Petitioner did not object during the closing argument. This Court is not required to raise the issue of procedural default *sua sponte*. *Trest v. Cain*, 522 U.S. 87, 89 (1997).

18

was out of town Mr. King would call her a liar.  They didn't ask her whether or not the defendant was out of town because they were scared she was gonna tell the truth. They were scared she was gonna tell the truth.

*Id.* at 50.

Viewing the prosecutors statements in context, these rebuttal remarks were within the wide latitude afforded to prosecutors in such a situation.  *See Angel*, 682 F.2d at 607-08.  These comments did not shift the burden of proof; they were merely a response to defense counsel's argument and a comment on the evidence.  Furthermore, even if the remarks were improper, the Court agrees with the Michigan Court of Appeals that, given the overwhelming evidence against Petitioner, there is no reasonable possibility that the comments affected the outcome of the trial.  Any possible error that could be construed from the prosecutor's remarks were harmless because they could not have had a  "substantial and injurious effect or influence" on the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

### 3.  "Other Acts" Evidence

Petitioner complains that, in the prosecutor's opening statement, the prosecutor referred to a search and seizure at a location other than the one for which Petitioner was on trial.  Petitioner claims that the evidence was irrelevant and inadmissible because the prosecutor failed to give notice of his intent to use the evidence and because any probative value of the evidence was substantially outweighed by the suggestion that Petitioner had a propensity to commit crimes and was a bad man.

Considering the prosecutor's opening statement, the Michigan Court of Appeals noted that

the comment was brief and tempered immediately with a curative instruction.[4]  Furthermore,

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. . . .  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003).  Because there is no Supreme Court decision holding that the admission of similar acts evidence violates the Constitution, the state court's rejection of Petitioner's prosecutorial-misconduct claim cannot be deemed "contrary to" Supreme Court precedent under AEDPA.  *Id*.

Petitioner also alleges that he was denied a fair trial when the prosecutor elicited testimony from two veteran police officers that they had prior contacts with Petitioner.  Petitioner claims that defense counsel was ineffective for not seeking a mistrial following this testimony.

Sergeant Michael Gould testified that he first became familiar with Petitioner in 1991. Tr. Apr. 13, 1998, pp. 11-13; Tr. Apr. 14, 1998, p. 45.  Sergeant James Ridener testified that he had seen Petitioner years earlier.  Tr.  Apr. 15, 1998, p. 6.  However, neither officer stated that his prior contact with Petitioner was due to criminal activity.  The prosecutor apparently asked about the prior contacts in an attempt to disprove the defense of mistaken identity.  As a result, the prosecutor's questions were not improper, nor prejudicial, and defense counsel was not ineffective for failing to object to the officers' answers.

### 4.  Conclusion on Prosecutorial-Misconduct Claims

---

[4]  The parties' opening statements are not contained in the record submitted by Respondent.

Reviewing Petitioner's claims of prosecutorial misconduct, the Court finds that the prosecutor's conduct and remarks were not improper nor were they flagrant.  Furthermore, even if the conduct or remarks were improper in any manner, the curative instructions given to the jury were sufficient to remedy the situation, such that the outcome of the trial was not affected in any way.  Consequently, Petitioner was not deprived of due process or a fair trial, and the state court's conclusion that Petitioner's prosecutorial-misconduct claims lacked merit did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.    Petitioner's claims of prosecutorial misconduct fail and will be dismissed.

### C.  Claims VI, VIII, and IX:  Violation of the Fourth Amendment

The sixth, eighth, and ninth claims brought by Petitioner, raise issues under the Fourth Amendment to the United States Constitution.  The sixth claim alleges that the affidavit in support of the search warrant was insufficient and, therefore, the search warrant should not have been issued and the evidence derived from the search and seizure should have been suppressed.  The eighth claim alleges that the affidavit was defective because it failed to establish probable cause and failed to meet the statutory requirements.  More specifically, Petitioner alleges that the affidavit failed to establish the credibility or reliability of Ned Davis, the person that supposedly supplied the information that led to Petitioner's arrest.  The ninth claim alleges that the affidavit supporting the warrant contained recklessly false statements.

The Supreme Court held in *Stone v. Powell*, 428 U.S. 465, 482 (1976), that, when "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the

ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." "All that *Stone v. Powell* requires is an 'opportunity' for full and fair consideration of the claim for suppression. . . ." *Jennings v. Rees*, 800 F.2d 72, 77 (6th Cir. 1986). "For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim . . . must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (1985) (citing *Riley v. Gray,* 674 F.2d 522, 526 (6th Cir. 1982)).

The proper manner to raise Fourth Amendment claims in the state of Michigan is to present a motion to suppress. A motion to suppress can be brought before or during trial or even on appeal. *See People v. Ferguson*, 376 Mich. 90, 93-95; 135 N.W. 2d 357, 358-59 (1980); *People v. Harris*, 95 Mich. App. 507, 509; 291 N.W.2d 97, 99 (1980). In the instant case, Petitioner filed a motion to suppress evidence before trial and was afforded an evidentiary hearing on his motion. One of the issues at the hearing was whether the affidavit in support of the search warrant was valid. The trial court found Officer Murray to be more credible than the informant and denied Petitioner's motion to suppress evidence seized pursuant to the search warrant.

Because Petitioner was accorded a full and fair opportunity to assert his Fourth Amendment claim, habeas review of the Fourth Amendment claims Petitioner now asserts is barred by the doctrine of *Stone v. Powell*. Second guessing the state court's determination of the merits of these claims would not be consistent with *Stone v. Powell*. *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d at 526). Therefore, this Court will deny Petitioner's claims.

### D.  Claim X:  Ineffective Assistance at the *Ginther* Hearing

Petitioner next alleges that his post-conviction attorney (Thomas Loeb) was ineffective

22

because Mr. Loeb did not call Petitioner's trial attorneys as witnesses at the *Ginther* hearing.  To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Petitioner's trial attorneys were subpoenaed for the *Ginther* hearing.  However, because the prosecutor also wanted to question those attorneys about allegations of perjury during Petitioner's trial, they could have become targets of the investigation into perjury.  For this reason, and on the advice of the trial attorneys own counsel, the trial attorneys asserted their Fifth Amendment right not to answer any questions regarding Petitioner and the investigation of defense witnesses.  Counsel for Petitioner's trial attorneys informed Mr. Loeb, Petitioner's post-conviction counsel, that he would oppose any attempt to subpoena the trial attorneys and, furthermore, would seek costs if the trial attorneys were subpoenaed.  The trial court ruled that the trial attorneys were unavailable as witnesses and that it would be useless to subpoena the attorneys only to have them reassert their Fifth Amendment right to remain silent.  Tr. Sept. 24, 1998, at 3-7; Tr. May 26, 1999, at 7-8; Tr. May 27, 2999, at 173-87.

"[N]either the prosecution nor the defense may call a witness knowing that the witness will assert his Fifth Amendment privilege against self incrimination."  *United States v. Crawford,* 707 F.2d 447, 449 (10th Cir. 1983).  Therefore, Mr. Loeb was not ineffective for declining to call Petitioner's trial attorneys at the *Ginther* hearing.  Petitioner has no right to relief on the basis of his tenth claim.

### E.  Claim XII:  The Trial Court

23

Petitioner's twelfth claim alleges that the trial court's conduct and rulings throughout trial denied Petitioner his right to a fair trial. Specifically, Petitioner contends that the trial court (1) should have granted his requests for a mistrial, (2) failed to address the issue of the conflict of interest, and (3) gave an erroneous instruction on the charge of felon in possession of a firearm.

### 1.  Failure to Grant a Mistrial

Petitioner alleges that the trial court should have granted a mistrial when the prosecutor questioned a defense witness about a prior conviction and when the prosecutor mentioned a search that was conducted at an address on Bancroft Street. The question about a witness' prior conviction was improper, but the trial court instructed the jurors to disregard the question and not to assume that the witness had been charged or convicted. The prosecutor's comment about a search at a location other than the one for which Defendant was on trial also was followed by a cautionary jury instruction. Because jurors are presumed to follow their instructions, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and because the alleged prosecutorial misconduct was not egregious, the trial court did not deprive Petitioner of a fair trial by taking remedial action instead of granting a mistrial.

### 2.  The Alleged Conflict of Interest

Petitioner alleges that the trial court failed to make a ruling during trial on the matter of his attorneys' conflict of interest. As indicated previously, the Court is reserving judgment on this claim.

### 3.  The Jury Instructions

Petitioner alleges that the trial court erroneously instructed the jury on the charge of felon in possession of a firearm. The trial court instructed the jurors that the second element of the offense

24

was that the defendant had a prior felony conviction.  The court then said, "[B]oth sides have agreed that I will simply tell you that that is the case."  (Tr. Apr. 17, 1998, pp. 64-65.)

Petitioner claims that the trial court invaded the province of the jury by excluding from the jury's consideration an essential element of the charged offense.  However, the parties apparently stipulated that Petitioner had a prior conviction, and Petitioner does not deny the existence of a prior felony conviction.  The court was not at fault for honoring the attorneys' stipulation, and the instruction to jury did not deprive Petitioner of a fair trial because the prosecutor could have proved the existence of the prior conviction through court records in the absence of the stipulation. Moreover, the trial court explained that the prosecutor still had to prove that Petitioner possessed a firearm.

### F.  Claim XVI:  Cumulative Effect of Errors

Petitioner's sixteenth and final claim alleges that the cumulative effect of the errors at trial deprived him of a fundamentally fair trial.  Constitutional errors that would not individually support habeas relief cannot be cumulated to support habeas relief.  *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied*, __ S. Ct. __, 2006 WL 2569837 (Nov. 6, 2006) (No. 06-6276); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).  Consequently, Petitioner is not entitled to habeas relief on the ground that the alleged errors at trial, when combined, require reversal of his convictions.

### VI.  Conclusion

For the reasons set forth above,

**IT IS ORDERED AND ADJUDGED** that **Claims I, III - VI, VIII - X, XIII-XIV, and XVI**, are **DISMISSED**.

25

**IT IS FURTHER ORDERED** that the **PORTIONS** of **CLAIM XII** which complain of the trial court's jury instructions and failure to grant a mistrial are **DISMISSED**.

The Court reserves judgment on claims II, VII, XI, XV, and the portion of claim XII which alleges that the trial court failed to rule on Petitioner's conflict-of-interest claim. Petitioner may pursue these claims in an evidentiary hearing.

**IT IS FURTHER ORDERED** that this Court's **AUGUST 9, 2004 ORDER** [docket entry #10], which denied Petitioner's motions for appointment of counsel and an evidentiary hearing without prejudice, is **VACATED**.

An order referring the remaining matters to the Magistrate Judge will be issued separately.

**SO ORDERED.**

Dated:   December 20, 2006          s/Paul V. Gadola
                                    HONORABLE PAUL V. GADOLA
                                    UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   December 20, 2006 , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
            William C. Campell                         , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                    Jerome Bray                         .


                                    s/Ruth A. Brissaud
                                    Ruth A. Brissaud, Case Manager
                                    (810) 341-7845

---