UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME EDWARD BRAY,                    No. 04-CV-40123

              Petitioner,              District Judge Paul V. Gadola

v.                                     Magistrate Judge R. Steven Whalen

JOHN CASON,

              Respondent.
_____ /

## REPORT AND RECOMMENDATION

Petitioner Jerome Bray has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. The matter has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons that follow, I recommend that the Petition be DENIED.

## I.  PROCEDURAL HISTORY

Following a jury trial in the Wayne County, Michigan Circuit Court, Petitioner was convicted of possession with intent to deliver 650 grams or more of cocaine, M.C.L. §333.7401(2)(a)(i), possession with intent to deliver less than five kilograms of marijuana, M.C.L. §333.7401(2)(d)(iii), and possession of a firearm by a felon, M.C.L. §750.224f. He was sentenced to a mandatory term of life imprisonment for the cocaine conviction, two to four years for the marijuana conviction, and two to five years for the felon in possession conviction, all sentences to run concurrently.

Petitioner filed a motion for new trial, alleging ineffective assistance of trial counsel. Trial counsel Raymond Burkett and Arlene Woods signed affidavits in support of the motion, but ultimately declined to testify, claiming a Fifth Amendment privilege. After conducting an evidentiary hearing, the trial court denied the motion in a written opinion and order. The Michigan Court of Appeals affirmed the Petitioner's convictions on direct review, and the Michigan Supreme Court denied leave to appeal.

Petitioner filed the present petition on May 25, 2004, raising 16 issues. On December 20, 2006, the District Judge issued an Opinion and Order dismissing some of Petitioner's arguments on the merits, but reserving judgment on the following claims:[1]

II. Defendant [Petitioner] was denied his due process right to the effective assistance of counsel, where his trial attorneys concurrently represented three criminal defendants with conflicting interests that influenced trial strategy, where counsel refused to allow defendant to testify, and where counsel's failure to explore the correctness of documents presented by a key defense witness, resulted in blatantly perjurious testimony being presented to the jury.

VII. Defendant [Petitioner] is entitled to a new suppression hearing and suppression of the evidence in question where he was denied effective assistance of counsel during his hearing[.] Counsel failed to request or present the affidavit and warrant which was under attack.

XI. Defendant [Petitioner] was denied his constitutional right to effective assistance of counsel where a conflict of interest existed where counsel represented Ned Davis and Deon Brown[.] The conflict was raised by the prosecution after

---

[1]The numbering of these claims corresponds to the numbering assigned by the Court in its Opinion and Order of December 20, 2006 (Docket #46).

impaneling the jury. The conflict is in violation of state and federal law.

XV.     Defendant [Petitioner] is entitled to reversal of his conviction where he was denied his state and federal right to effective assistance of counsel as guaranteed by state and federal constitutions where counsel made several errors during the course of trial.

The District Judge also reserved judgment on the portion of issue XII which alleges that the trial court failed to rule on Petitioner's conflict of interest claim. The Court held that the Petitioner could pursue all of the above claims in an evidentiary hearing, and referred the case to the undersigned Magistrate Judge to conduct all pretrial proceedings [Docket #47].

The evidentiary hearing was conducted on November 14, 2007. Petitioner's former attorneys Steven Fishman, Raymond Burkett and Arlene Woods testified. The hearing was then adjourned to December 6, 2007, in order for counsel to determine if Deon Brown would testify. Brown did not appear or testify on that date, instead claiming Fifth Amendment privilege.

## II.     FACTS

### A.     Trial Proceedings

In the December 20, 2006 Opinion and Order [Docket #46], at pp. 5-7, this Court fully set forth the relevant historical facts as adduced at trial, and it is not necessary to repeat them here in any great detail. In summary, police officers testified that on February 27, February 28 and March 3, 1997, they conducted surveillance at 515 Tobin Street in the City of Inkster, Michigan. They initiated this investigation based on information from Ned Davis, whom they

had arrested, and who elected to provide information about cocaine dealers in the area. Davis told the police about a dealer named "J" who drove a Camaro.

In any event, officers testified that on the February dates, they observed the Petitioner making frequent, short stops at the Tobin Street apartment. On March 3rd, they saw the Petitioner arrive at the apartment and, after a short time, leave the apartment carrying a knapsack. Petitioner got into a car and drove away. Following a police chase, during which Petitioner at one point left the car, jumped a fence and ran, Petitioner was arrested. A search of the car turned up a knapsack containing about 1,400 grams of crack cocaine and 1,975 grams of powdered cocaine. The police also obtained a search warrant for the Tobin Street apartment, and found additional drugs, drug paraphernalia, and firearms.

Petitioner admitted to the police that he sometimes sold drugs and that he intended to sell the drugs in his car when his "boss" told him to do so. He admitted that the guns found in the house belonged to him. The trial court denied a motion to suppress the Petitioner's statement.

The defense theory was that the Petitioner was in California during the February surveillance, and that it was his cousin, Deon Brown, that the police saw on those dates. In support of that theory, the Petitioner's aunt (Deon Brown's mother) testified that her son Deon, who had recently been released from prison, took the Petitioner's car without his permission in February of 1997, and that the Petitioner was in California at that time. She testified that Deon Brown strongly resembled the Petitioner ("Looking at him it is like

looking at Jerome. They favor just that much.").[2] In addition, Petitioner's sister testified that she was his supervisor at work, and she produced documents purporting to show that Petitioner was on vacation during the period in question. However, this testimony was impeached by prosecution witness Valerie Sovinski, who testified that Petitioner's sister was not his supervisor, and that the records she produced were false.

### B. The Evidentiary Hearing

This Court held an evidentiary hearing on November 14, 2007. Attorney Steven Fishman testified that he represented Petitioner in pretrial proceedings, through the preliminary examination stage (Tr. 11-14-07, 8-9). He filed a motion to suppress Petitioner's statement to the police, but did not file a motion challenging the search of the Tobin Street apartment. *Id.,* 10. He testified that his focus was on the confession, because not only would a challenge to the search of the apartment have been unsuccessful, but regardless of whether the drugs in the house were suppressed, there were over 650 grams of cocaine found in the car, a sufficient amount to subject the Petitioner to a life sentence:

> "[Mr. Fishman]: My own opinion at that time, and it hasn't changed, although, remembering–my recollection is a bit hazy, the thing to do was to challenge his confession, which we did. Because that–obviously if that comes into evidence and it's believed, then it kind of makes the case a worst (sic) loser than it might have been in the first place. I didn't believe there was anything that could be done to challenge the seizure of the drugs, either in the vehicle or the search of the apartment. I didn't think–that's why I didn't file it. I didn't file a Motion to Quash the Search Warrant because I didn't think it would win. Plus, it didn't have any effect, in my view, on what was going to go on with respect to the drugs in the car, which was really the source of the

---

[2] Tr. 4-16-98, p.70.

case. I think that was–I think it was three and a half kilos. I know it was more than 650 grams."

"You know, that, to me, was the nub of the issue. Whether the Search Warrant is good or no good for the house, if you're in the car, if the jury believes you were in the car and they believe you had the drugs and if the confession comes in, you're going to get convicted. And that's why we attacked–I attacked the confession and we had a lengthy hearing on it." *Id.*, 19-20.

Raymond Burkett represented the Petitioner at trial, along with co-counsel Arlene Woods. Mr. Burkett had a profound lack of memory as to the events surrounding the trial, including the nature of the defense. *See, e.g., Id.,* at 28. He conceded that he represented Ned Davis (the police informant), but did not remember when. *Id.*, 23-24. However, Petitioner's Exhibit #1, a judgment of sentence, showed that Burkett represented Davis in April of 1998, when Petitioner was on trial. *Id.*, 27. Burkett stated that he had no recollection of why he did not call Deon Brown or the Petitioner as witnesses. *Id.*, 30, 31. He also had no independent recollection of signing an affidavit on June 5, 1998, but did acknowledge his signature, and stated that he would not have signed it if it were not accurate to the best of his belief. *Id.*, 31, 32.

Arlene Woods recalled that part of the defense involved the theory that Deon Brown was using the Petitioner's car during the time in question, and that the drugs really belonged to Brown. *Id.*, 41. However, she did not recall ever representing Deon Brown, or why Brown was not called as a witness. *Id.*, 42-43. She testified that when Burkett learned that the Petitioner's sister had caused the defense to put forth fraudulent employment documents, he was furious. *Id.,* 45, 54. She said that the Petitioner at some point did tell her and Burkett

that he wanted to testify. Woods also signed an affidavit, stating, "To the best of my recollection what I have here is–is accurate, that I can recall, of the case." *Id.*, 47. In response to questioning by the Court, she testified as follows:

> Q [by the Court]: Well, do you recall what's in the Affidavit?
>
> A: Looking at it, yes.
>
> Q: Looking at the Affidavit, can you say today, sitting on this witness stand, that the facts set forth in this Affidavit are true and accurate?
>
> A: I think the information in the Affidavit is true and accurate. *Id.*, 35.

Woods' affidavit, which is appended to this Petition, and which Woods adopted at the evidentiary hearing, as indicated above, states that throughout the trial, Petitioner told her that he wanted to testify in his own behalf. Woods described the substance of Petitioner's proposed testimony as follows:

> "[C]entral to [Petitioner's] testimony was his recollection that he had been out of town during certain of the crucial times when the police witnesses testified that they had him under surveillance."

Woods' affidavit states that she advised Burkett to have the Petitioner testify, but that "[c]ontrary to my advice, Mr. Burkett, who was very angry at the way the situation had developed, announced to the Court that the defense was resting at that point. I know that Mr. Burkett's decision to rest the defense was contrary to the wishes of the defendant himself."

Admitted as Petitioner's Exhibit #3 were certified documents from Wayne County regarding *People v. Deon Brown*, indicating that attorney Raymond Burkett represented Deon Brown, filing an appearance in 18th District Court on November 12, 1997, through

sentencing in Wayne County Circuit Court on February 26, 1998, prior to Petitioner's trial.

## III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state court decisions. Specifically, 28 U.S.C. §2254(d) provides:

> "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim - -
>
>     a.    resulted in a decision that was contrary to, or involved in unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>     b.    resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In *Williams* v *Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that in order to justify a grant of habeas corpus relief under the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams*, 529 U.S. at 412. Under subsection (d), habeas relief may not be granted unless (1) the state court decision was contrary to established federal law, or (2) the state court decision involved an unreasonable application of clearly established federal law. *Williams* held that a state court decision is "contrary to" clearly established federal law "if the state court arrives at a

conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this court has on a set of materially indistinguishable facts." *Id* at 413. *Williams* further held that a state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Id.* In *Brown v. Payton*, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005), the Supreme Court stated that a "state court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner."

On habeas review, this Court must give deference to the state court's factual conclusions unless they are based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Furthermore, § 2254(e)(1) establishes a presumption of the correctness of state court factual determinations. A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denied* 527 U.S. 1040 (1999).

## IV. DISCUSSION

All of the remaining issues in this case revolve around claims of ineffective assistance of counsel.

The Sixth Amendment guarantees the accused in a criminal prosecution the right to the effective assistance of counsel. *Strickland* v. *Washington*, 466 U.S. 668, 104 S.Ct. 2052,

80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-part test for assessing claims of ineffective assistance. First, did the attorney make errors "so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment," 466 U.S. at 687. To establish deficient performance under this prong of *Strickland*, the defendant must show that his attorney's representation "fell below an objective standard of reasonableness." *Id.*, at 688. The second prong of *Strickland* examines whether the defendant was prejudiced by counsel's deficient performance. To meet the prejudice standard, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Where an ineffective assistance claim is shown to be based on counsel's actual conflict of interest, the *Strickland* formulation changes: in such a case, prejudice is presumed. *See Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In *Strickland*, 446 U.S. at 687, the Supreme Court explained that "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" (quoting *Cuyler, supra*). In *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir.1987), the Court adopted the standard set forth in *United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir.1983), to determine whether an actual, as opposed to a hypothetical conflict of interest exists:

> "We will not find an actual conflict unless appellants can point to 'specific instances in the record to suggest an actual conflict or impairment of their interests.' ... Appellants must make a factual showing of inconsistent interests

and must demonstrate that the attorney 'made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical.' ... There is no violation where the conflict is 'irrelevant or merely hypothetical'; there must be an "actual significant conflict."

*See also United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000).

The Supreme Court has also held that "[r]equiring or permitting a single attorney to represent codefendants...is not per se violative of constitutional guarantees of effective assistance of counsel." *Hollaway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

With these guiding principles in mind, the Court will proceed to analyze the claims against the trial attorneys.

### A.    Attorney Steven Fishman (Issue VII)

Petitioner claims that attorney Fishman was ineffective for not investigating or challenging the search of the Tobin Street apartment.  This claim is analyzed under the two-part test of *Strickland*.

*Strickland* recognized that counsel is presumed to have rendered adequate assistance, and claims of ineffective assistance are reviewed with considerable deference to an attorney's strategic decisions.  *Id.*, 466 U.S. at 689-91.   In this case, attorney Fishman testified that his decision to not challenge the search warrant was based on two considerations: (1) such motion was not likely to be successful, especially since the Petitioner lacked standing, and (2) suppression of the evidence found in the apartment was irrelevant to the more important

fact that more than 650 grams of cocaine–the possession of which carried a mandatory life sentence–were found in Petitioner's car.

As to the first prong of *Strickland*, the Petitioner–who has the burden of demonstrating that his counsel was constitutionally ineffective–has presented nothing to show that he in fact had standing to challenge the search warrant, or that he would have been successful in doing so. *See Worthington v. United States*, 726 F.2d 1089, 1093-94 (6th Cir. 1984). He has therefore not rebutted his attorney's testimony that the failure to challenge the search was a valid strategic decision of counsel.

More significantly, Petitioner cannot show prejudice resulting from the failure to challenge the search. The testimony that he was seen leaving the apartment with a knapsack later found to contain over three kilograms of cocaine, and the large amount of cocaine found in his car, in conjunction with his confession, overwhelmingly support his conviction and his life sentence without reference to the search of the apartment. Thus, Petitioner has not shown a reasonable probability that but for counsel's alleged error, the result of the proceedings would have been different. Petitioner is not entitled to habeas relief based on his claims against attorney Fishman.

### B.  Attorneys Burkett and Woods–Trial Errors (Issues II and XV)

Petitioner raises a number of arguments concerning his attorneys' conduct at trial, including their failure to discern that the employment documents introduced during his sister's testimony were false; failure to adequately investigate his sister's proposed

testimony; failure to object to "bad acts" testimony and other instances of improper prosecutorial questioning of witnesses; making an "incoherent" opening statement; and refusing to allow him to testify in his own behalf.

These claims are all subject to the two-part *Strickland* test. It is on the second prong of that test–prejudice–that Petitioner's claims falter. Indeed, the Court may apply the *Strickland* test in inverse order, determining first whether, without regard to the quality of counsel's performance, the Petitioner suffered prejudice:

> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.,* at 697.

However erroneous the admission of "bad acts" evidence may have been under state law, and whatever objections counsel failed to make at trial, the following two facts overshadow any alleged strategic blunders of counsel: (1) Petitioner had actual possession of approximately three and one-half kilograms of cocaine on March 3, 1997;[3] and (2) he confessed that he sold drugs, that he intended to sell these particular drugs, and that the firearms found in the apartment were his.[4] As the Michigan Court of Appeals observed, the

_____

[3] The 3.5 kilograms of cocaine were found in a knapsack in the car that Petitioner drove from the Tobin Street location, and which he abandoned following a police chase. He had been observed leaving the apartment building with the knapsack in his possession.

[4] In the Opinion and Order of December 20, 2006 [Docket #46], the Court rejected Petitioner's habeas claim no. I, that the confession was involuntary. Following a lengthy discussion at pp.12-15, the Court stated as follows: "The state court concluded that

evidence was overwhelming.

The fiasco regarding the Petitioner's sister's testimony, the false employment records, and the bungled alibi defense did not create prejudice within the meaning of *Strickland*. If none of that happened, and if counsel had simply not called the sister as a witness, the verdict almost certainly would have been the same. What difference did it make if Petitioner was in California in February? On March 3rd, he was arrested with multiple kilograms of cocaine, and confessed. Finding a lack of prejudice, the Michigan Court of Appeals made the point as follows:

> "Defendant claims that his attorneys were also ineffective in failing to investigate his sister's testimony. However, defendant's aunt, his other sister, and his friend from California all testified that defendant was in California during the last two weeks of February 1997, when the apartment was under surveillance. All of these witnesses were impeached by evidence that the schedules, time sheets, and other records obtained from defendant's personnel file from work indicated that he worked on February 24, 25, and 26, 1997. There was also evidence showing that defendant was a part-time employee and did not accrue any leave time. *Further, even if defendant really was in California and the police saw his cousin at the apartment instead of him, that fails to rebut the fact that defendant was arrested on March 3, 1997, with more than a kilo of cocaine in his car. Thus, while his sister's perjury was certainly damaging, defendant has failed to show that, if counsel had investigated further and had refused to allow her to testify, the outcome of his trial might have been different.*" (Emphasis added).

Finally, as to counsel's alleged refusal to let the Petitioner testify in his own defense: without question, a criminal defendant has a right to testify, and the decision to do so or not

---

Petitioner's statement was voluntary and not the result of police coercion. This Court finds that the state court's conclusion was not contrary to, or an unreasonable application of, Supreme Court precedent."

is his, not his attorney's. However, in this case, even assuming that Mr. Burkett improperly rested the defense case against the wishes of the Petitioner and the advice of his co-counsel, there was no prejudice.[5] At the *Ginther*[6] hearing on his motion for new trial, the Petitioner testified as to what he would have said at trial, and Judge Brookover (the trial judge) found the testimony "simply unbelievable," ultimately holding that the Petitioner's testimony would not have changed the outcome of the trial:

> "I find that Mr. Bray cannot, and has not, demonstrated a probability that but for the actions of counsel, the trial would have ended with a different result. Mr. Bray had a fair trial, and he could not have changed the outcome with his testimony. Frey v Schuetzle, 151 F.3d 893 (C.A. 8 [N.D.] 1998). Therefore, I need not consider whether a decision by counsel denying him the chance to testify was unreasonable.
>
> "The evidence against Mr. Bray was overwhelming. He was observed carrying a knapsack which contained cocaine. He left the apartment, put the knapsack in a car, and drove away. The car contained additional cocaine and marijuana. He confessed that the drugs were his and were for sale. His testimony to the contrary at the Ginther hearing was simply unbelievable. Even if a jury believed that he had been in California during the surveillance, he was arrested with a large amount of drugs. His story about damage to the car, and injury to his forehead, was contradicted by clear photographic evidence." *Opinion and Order Denying Defendant's Motion for New Trial*, p. 7.

---

[5] The affidavits of Ms. Woods and Mr. Burkett discuss the circumstances under which the Petitioner was allegedly not permitted to testify. As noted, Ms. Woods adopted her affidavit at the evidentiary hearing in this Court. Petitioner argues that both attorneys' affidavits are also admissible as recorded recollections under F.R.E. 803(5). The Court need not decide that question; even if both affidavits are admitted and considered, and even if it is assumed that counsel's conduct was improper, Petitioner still loses, because he cannot show prejudice under *Strickland*.

[6] *People v. Ginther*, 390 Mich. 436, 21 N.W.2d 922 (1973). This is the state analog to a *Strickland* hearing.

Likewise, the Michigan Court of Appeals held, at p.6 of its opinion:

"In sum, we agree with the trial court that the evidence against defendant was overwhelming and that his testimony 'was simply unbelievable.' Therefore, even if defendant's attorneys were ineffective in failing to allow him to testify, defendant has failed to show that, but for that error, the outcome of his trial might have been different."

Disputing the trial judge's credibility finding, Petitioner argues that he "had the right to have a jury, not the judge, consider his testimony." *Petitioner's Post-Hearing Memorandum of Law*, p. 17. However, in assessing whether counsel's alleged deficient representation created prejudice, *Strickland* requires a judicial determination of the probable effect of the testimony that is claimed to have been improperly suppressed. In view of all the facts, especially the Petitioner's actual possession of multiple kilograms of cocaine and his confession, I agree with the trial judge and the Court of Appeals that Petitioner's testimony would likely have had no effect on the jury's verdict. More to the point, it cannot be said that the state courts unreasonably applied *Strickland v. Washington*.

## C.    Conflict of Interest (Issues II, XI and XII)

Petitioner argues, pursuant to *Cuyler v. Sullivan, supra*, that he was denied his right to the effective assistance of counsel based on his attorneys' conflict of interest, that is, that trial counsel also represented Ned Davis and Deon Brown. Ned Davis was the "snitch" who provided the police with information that led to the surveillance and search of the Tobin Street apartment. He testified at the pretrial suppression hearing. Deon Brown was the Petitioner's cousin, and it was Petitioner's theory that it was Brown, not he who owned the drugs.

# 1. Ned Davis

The issue of a possible conflict involving Ned Davis was first raised by the prosecutor at the beginning of trial. The prosecutor informed the court that at the pretrial evidentiary hearing on the confession, Petitioner was represented by attorney Steven Fishman. At that time, Ned Davis, who testified at the hearing, was represented by Mr. Burkett and Ms. Woods, who were now Petitioner's trial counsel (Tr. 4-13-98, 3). The prosecutor stated:

> "And I'd just like to bring up the question of a conflict of interest and I'd ask that you inquire of the defendant." *Id.*

Attorney Woods, indicating that they had discussed the matter in chambers, said that there was no joint representation, and there was no "actual conflict [that] affected the adequacy of representation." *Id.* at 4. She stated:

> "As we indicated in chambers, Your Honor, I don't believe there to be a conflict unless the persons have, first of all, antagonistic defenses; and second of all unless we as a defense team on behalf of Mr. Bray are seeking to use information that we gleaned from Mr. Davis through the attorney-client relationship. That is not the case here.
>
> "The information that we would seek to obtain from Mr. Davis goes to establishing the police officers' interest, bias and prejudice in this case. It in no way compromises Mr. Davis
>
> "And I believe Mr. Burkett has already indicated to you that Mr. Davis' case has been adjudicated on a Cobbs hearing. All that is left to do is a sentencing in that case." *Id.*, at 4-5.

The prosecutor nevertheless asked the court to inform Petitioner of the conflict, and permit him to waive any conflict, if he so chose. The following colloquy ensued:

> MR. KING (the prosecutor): That's why I ask that the Court inquire of the defendant. They don't waive his rights. He's got to get up and the Court's got

to inform him there may be a conflict of interest and does he recognize that and does he want to go forward.

THE COURT: Mr. Bray, you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. You understand that what Mr. King is saying is that because your attorneys also represent or represented Mr. - - what's his name again?

MR. BURKETT: Davis.

MR. KING: Ned Davis, Your Honor.

THE COURT: Mr. Ned Davis; that if they call him as a witness there may be some conflict in their representation of you, that perhaps they may not be looking out for y our best interest because they may be looking at the interest of Mr. Davis versus yours. Now, have you discussed this with your lawyers?

THE DEFENDANT: Yes.

THE COURT: You think there is a conflict at all? You think that in any way you're being–you would be harmed or you would get less than one hundred percent loyalty from your attorneys on this matter because of that?

THE DEFENDANT: No, Sir. (Tr. 4-13-98, 6-7).

Petitioner's conflict of interest claim vis-a-vis Ned Davis fails for two reasons. First, Petitioner waived any conflict. While criminal defendants have the right to a conflict-free attorney, *Cuyler v. Sullivan*, they also have the right to privately retained counsel of their own choosing. *Wheat v. United States*, 486 U.S. 153, 158-59, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Where those two rights appear to collide, a defendant may waive the right to conflict-free representation. *United States v. Reese*, 699 F.2d 803, 805 (6th Cir. 1983). A waiver, of course, must be knowing and voluntary, that is, it must be made with "sufficient

-18-

awareness of the relevant circumstances and likely consequences."  *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).  *See also Williams v. Meachum*, 948 F.2d 863, 866-67 (2nd Cir. 1991) ("[W]e will regard a waiver of conflict-free representation to be knowing and intelligent when a defendant shows that he is aware of and understands the various risks and pitfalls [and] that he has the rational capacity to make a decision on the basis of this information").

In *United States v. Lowry*, 971 F.2d 55, 60 (7th Cir. 1992), the court noted the dilemma faced by trial courts when, as in the present case, a prosecutor raises a conflict of interest question:

> "If the court is alerted to a conflict of interest and disqualifies a defendant's attorney, the defendant may claim on appeal that he was deprived of the right to retain the counsel of his choice.  If, on the other hand, the court accepts the defendant's waiver of his right to conflict-free counsel and allows him to proceed despite a conflict, the defendant may later claim that his waiver was invalid for some reason, and that an alleged conflict of interest rendered his counsel constitutionally ineffective....As the Supreme Court put it in *Wheat*, 'trial courts face the prospect of being 'whip-sawed' by assertions of error no matter which way they rule.'  486 U.S. at 161, 108 S.Ct. at 1698."

The *Lowry* court found that the defendant knowingly waived his right to conflict-free counsel, thus barring a Sixth Amendment claim based on conflict of interest:

> "This is not to say that Lowry's waiver completely bars any ineffective assistance claim, but it does bar any claim based on [the attorney's] alleged conflict of interest.  To hold otherwise would be to render the waiver meaningless; a defendant would lose nothing by waiving his right and sticking with counsel who had a conflict, since he could always allege 'ineffective assistance' if convicted."  971 F.2d at 63-64.

*See also United States v. Micou*, 48 F.3d 1220, 1995 WL 99168 (Table) (6th Cir. 1995) (citing

*Lowry*, and affirming Judge Gadola's acceptance of defendant's waiver of his attorney's actual conflict of interest).

The Sixth Circuit has held that even where there is an actual conflict of interest, a court must accept a defendant's valid waiver of the conflict, absent compelling circumstances. *United States v. Reese*, *supra*, 699 F.2d at 805. *See also United States v. Guerrero*, 917 F.2d 564, 1990 WL 166414 (Table) (6th Cir. 1990) ("[W]e hereby reaffirm our holding in *Reese* and require the trial court to accept a valid waiver absent compelling circumstances").

The colloquy between the trial judge, defense counsel, the prosecutor and the Petitioner, quoted above, shows that Petitioner was made aware of the conflict and the potential consequences, and that he had fully discussed the matter with his attorney. While it could be argued that the judge could have been more detailed in his remarks to the Petitioner, the advice was sufficient to allow an informed and voluntary waiver. Again, *Lowry* is *apropos*:

> "The right question...is not whether the judge told the defendant everything. No choice of any kind is made with perfect information, and hindsight always turns up some additional snippet. The question is whether the defendant knew enough to make the choice an informed one–a rational reconciliation of risks and gains that are in the main understood. A choice may be intelligent and voluntary in this sense even though made without potentially important information." 971 F.2d at 62 (quoting *United States v. Roth*, 860 F.2d 1382, 1387-88 (7th Cir. 1988)).

Thus, the Michigan Court of Appeals correctly and reasonably held "that [Petitioner] was aware of the alleged conflict of interest and that he waived it." *Court of Appeals*

*Opinion*, p. 4.

Secondly, even if the waiver was somehow defective, the Petitioner has not shown that there was an actual, as opposed to a hypothetical conflict of interest with regard to Ned Davis. *See United States v. Hall, supra*, 200 F.3d at 966 ("There is no violation where the conflict is 'irrelevant or merely hypothetical'; there must be an 'actual and significant conflict'"). At the colloquy quoted above, attorney Woods clearly stated that there were no inconsistent defenses (Ned Davis was not charged), and that there was no possibility that, if Davis were called as a witness, she would be faced with examining him with regard to privileged communications. Nor was it even necessary to call Davis as a witness, since his testimony would have had no bearing on the overriding issue in this case: The Petitioner's actual possession of 3.5 kilograms of cocaine. As the trial judge commented, "I haven't the foggiest idea how Mr. Davis is relevant to this case, but I also don't see how who represents him is relevant to this cause." (Tr. 4-15-98, 133). The Petitioner has made no factual showing whatsoever of actual inconsistent interests between himself and Mr. Davis, or that his attorneys "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *United States v. Hall, supra*, 200 F.3d at 965.

Finally, the trial court's claimed failure to rule on the conflict issue (Issue XII) does not form the basis of habeas relief. The judge implicitly rejected the prosecutor's claim of conflict by permitting counsel to proceed to verdict. The judge also addressed and rejected the issue in his written opinion denying the Petitioner's motion for new trial. Furthermore,

the Court of Appeals fully addressed this issue, and found it to be without merit. None of these state court decisions unreasonably applied clearly established federal law.

### 2. Deon Brown

Deon Brown did not testify at trial, at the state court motion for new trial, or at the evidentiary hearing held in this Court. Although Petitioner's counsel indicated that his office had been in touch with Mr. Brown, who is apparently living in Texas, in the end, Mr. Brown chose to exercise his Fifth Amendment right not to testify, and did not appear at the hearing scheduled for December 6, 2007.

However, Mr. Brown did sign an affidavit in November of 2001. The first question is whether this affidavit is inadmissible hearsay. Petitioner argues that Brown's affidavit is admissible as a statement against interest under Fed.R.Ev. 804(b)(3), which states:

> **(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> **(3) Statement against interest.** A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

First, Mr. Brown's affidavit, which is appended to the Petition, does not directly expose him to criminal liability. He states only that he lived on Tobin Street with his cousin, Latise Bray, and that he "had knowledge of the drugs that were in Mr. Bray's car." He does not say that they were his drugs, or that Petitioner had no involvement in possessing the

-22-

drugs.  Furthermore, in denying the motion for new trial, the trial judge found that there was

no actual conflict of interest, because Brown would not have testified even if subpoenaed:

> "[Petitioner] appears to argue that if counsel had not had the conflict, they
> would have called both Mr. Davis and Mr. Brown to the stand and they would
> have testified in his behalf.  The court totally rejects the argument that Dion
> Brown would have come to Mr. Bray's trial and subjected himself to a
> sentence of life in prison without parole by testifying under oath that the
> cocaine in Mr. Bray's car was in fact his."  *Opinion and Order Denying*
> *Defendant's Motion for New Trial*, p. 8.

Of course, Judge Brookover's statement now appears prescient, given Mr. Brown's

decision to not appear and testify at this Court's evidentiary hearing.

More significantly, the real importance to Petitioner of Brown's affidavit is not the

inference that the drugs were Brown's, but that attorney Burkett had an actual conflict of

interest, that is, that he chose not to call Brown as a witness because to do so would be

detrimental to Brown's case.  Under *Cuyler v. Sullivan*, the only way the Petitioner can avoid

an analysis of prejudice (in which he would lose) is to show an actual conflict that would

amount to structural error.  Paragraphs 7 through 11 of Brown's affidavit purport to establish

this actual conflict.  In particular, paragraph 11 states:

> "11).  I told counsel's (sic) that I still, wished to testify, for Mr. Bray, he
> informed me that it would be detrimental to my case and informed me not to
> testify."

This critical portion of the affidavit can in no way be considered a statement against

interest, and is not admissible under any other hearsay exception. I therefore find that

Brown's affidavit is not admissible, and will not be considered in evaluating whether

Petitioner's attorneys were operating under a conflict of interest.

Finally, it must be noted that the docket entries from Mr. Brown's Wayne County Circuit Court case (Petitioner's Exhibit #3), in which Mr. Burkett represented him, show that he was sentenced, and the case was closed, on February 26, 1998, prior to Petitioner's trial. Thus, this case involves successive, rather than concurrent representation. "In *Mickens v. Taylor*, 535 U.S. 162, 175, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), the Supreme Court found that the presumed prejudice standard of *Sullivan* was clearly established only in the situation of a conflict of interest due to multiple concurrent representation." *Stewart v. Wolfenbarger*, 468 F.3d 338, 350 (6th Cir. 2006). In *Stewart*, the Sixth Circuit clearly held that in cases of consecutive representation, the *Strickland* standard applies:

> "This Court has consistently held that, for § 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies. *See Gillard v. Mitchell,* 445 F.3d 883, 891 (6th Cir.2006) (successive representation); *Whiting v. Burt,* 395 F.3d 602, 619-20 (6th Cir.2005) (same counsel for trial and direct appeal); *Lordi v. Ishee,* 384 F.3d 189, 193 (6th Cir.2005) (successive representation); *Smith v. Hofbauer,* 312 F.3d 809, 818 (6th Cir.2002) (counsel was charged with a crime in the same county as the petitioner)." *Id.*, at 350-51.

As discussed in the preceding sections, Petitioner cannot satisfy the "prejudice" prong of *Strickland*, given the overwhelming evidence against him.[7]

Accordingly, Petitioner has not shown ineffective assistance of counsel under either *Strickland* or *Cuyler v. Sullivan*.

## V.   CONCLUSION

---

[7]Likewise, the lack of prejudice dooms any claim that apart from any conflict, counsel's failure to call Brown as a witness was itself ineffective assistance under *Strickland*.

Because the Petitioner has not shown that the state courts' decisions were contrary to or unreasonably applied clearly established federal law, I recommend that the Petition for Writ of Habeas Corpus be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R.  Steven Whalen
R.  STEVEN WHALEN

UNITED STATES MAGISTRATE JUDGE

Dated:  March 13, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 13, 2008.

S/G. Wilson_____
Judicial Assistant